## HOLMES v. DONOHUE et al.

(Circuit Court, N. D. Illinois. July 1, 1896.)

COPYRIGHT—VALIDITY—SERIAL PUBLICATION.

The publication of a work in serial form in a magazine, before the deposit by the author of the copy of the title as required by the statute, invalidates a copyright afterwards procured.

This was a suit in equity by Oliver Wendell Holmes, Jr., executor of the estate of the late Oliver Wendell Holmes, against Michael R. Donohue and others, for alleged infringement of the copyright of "The Autocrat of the Breakfast Table." The cause was heard upon demurrer to the amended bill.

Williams, Holt & Wheeler, for complainant.

Elliott & Hopkins, for defendant.

JENKINS, Circuit Judge. The facts presented upon the issue joined by the demurrer to the amended bill, and which must be taken as true for the purposes of the demurrer, are these: Oliver Wendell Holmes was the author of a book entitled "The Autocrat of the Breakfast Table." Commencing in September, 1857, the publishers of a monthly periodical called the "Atlantic Monthly," by agreement with the author, published in that magazine, in serial numbers, the production of Mr. Holmes. The publication of such work in monthly installments was continued until, and concluded in, the monthly number published in October, 1858. The exclusive right of printing, publishing, and vending in any other form, except as serially published in the Atlantic Monthly, during the time mentioned, was by such agreement reserved to Oliver Wendell Holmes. In the month of November, 1858, the author deposited a printed copy of the title of the book, as provided by law, which title was thereupon recorded with, and within three months thereafter caused a copy of the book to be delivered to, the clerk of the court, as required by the then existing copyright law. The book was printed and published by the firm of Phillips, Sampson & Co., who were the proprietors of the Atlantic Monthly. In the year 1886, and on the 12th day of July in that year, and within six months before the expiration of the first term and period of enjoyment of the exclusive right of printing, publishing, and vending the book, "The Autocrat of the Breakfast Table," if such right was reserved by the action theretofore taken, Dr. Holmes took proper statutory proceedings to obtain a renewal of his copyright for the further term of 14 years from November 2, 1886. The defendants, in October, 1894, without the consent of the complainant, who, upon the death of Oliver Wendell Holmes, succeeded to his rights, published and sold the book, "The Autocrat of the Breakfast Table," so claimed to have been copyrighted. The sole question here is whether the publication of "The Autocrat of the

Breakfast Table" in serial form in the Atlantic Monthly, prior to the copyright of the work of Oliver Wendell Holmes, was a prior publication, invalidating the copyright procured by the author after such publication.

I have carefully considered the able arguments presented upon the hearing of this demurrer, and examined with care the various authorities to which I was referred. I have not the time at hand to write an opinion upon the very interesting question arising in this cause, and can only state the conclusion to which my mind has been constrained. The statute provides that no person shall be entitled to a copyright unless he shall, before publication, deliver to the office named a printed copy of the title of the book for which he desires copyright. The provisions of the copyright law are to be liberally construed to insure to the author the product of his brain, but such liberal construction cannot be indulged to do away with the positive requirements of the law. There must be a deposit of the title of the book before publication. In that way, and in that way only, can the protection of the statute be obtained. I cannot but regard the serial publication in the Atlantic Monthly of this work as a publication of this book. The statute does not mean that such publication must be in a completed form only. It means that the work shall not be given out to the world, whether in whole or in part, before the title of the work shall be deposited as required. This construction does not prevent the serial publication of any work. It merely requires the deposit of the title prior to such serial publication, and the law presumes that the publication without such deposit of the title is a dedication of the work to the public, and conclusively presumes that the author did not intend to reserve rights under the copyright law, for otherwise he would have complied with the very simple requirements of that law. I agree that all provisions of this law which may be deemed directory, and subsequent to the deposit of the title, are to be very liberally construed to protect the author in the right which he has sought to acquire; but the court would not be authorized to read out of the statute the positive provisions with respect to the deposit of the title of the book before it had been given to the public. It appears from this bill that this publication continued for a year prior to any attempt to deposit the title of the story. If an author can thus play fast and loose with the law, he could considerably extend the term of the monopoly which the law affords him, and that would be in direct antagonism to the spirit of the act which secures to him a limited monopoly of his work. It is not easy to perceive why the copyright law should receive any broader or more liberal construction than the patent law. Both seek to protect the product of the brain, and both should receive a liberal interpretation to that end, but the positive provisions of the one should no more be read away than the positive provisions of the other. In the one, the inventor must substantially claim and describe his invention. Failing so to do, he loses the benefit of the act. In the other, there is a positive provision that a printed copy of the title of the book must be filed before publication. I think it would be a refinement upon language to say that a serial publication

of the work is not a publication. The demurrer will be sustained, with leave to the complainant to amend, if he shall so be advised, by the first Monday of September.